### JANUARY TERM 1866, AT BOSTON.

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY, ⎤
Hon. EBENEZER R. HOAR, ⎥
Hon. REUBEN A. CHAPMAN, ⎬ Justices.
Hon. HORACE GRAY, Jr., ⎥
Hon. JAMES D. COLT, ⎦

[CONTINUED FROM VOLUME XI.]

## ESSEX COUNTY.

### Andrew S. Waters vs. Lucy W. Stickney.

The probate court, after admitting a will to probate, and after the time for appealing from the decree has passed, may admit to probate a codicil to the same will, written upon the back of the same leaf upon which the will was written, if such codicil escaped attention and was not passed upon at the time of the probate of the original will.

APPEAL from a decree of the judge of probate, admitting to probate a codicil to the will of John Waters.

His will, dated August 24th 1841, was written on the first page of a single leaf of paper, and the codicil, dated December 3d 1842, on the back of the same leaf. By the will, the testator appointed one of his sons executor, and gave all his estate,

real and personal, to his wife for life, with remainder to all his children, two sons and a daughter, in the same shares as if he had died intestate; but by the codicil he gave part of his real estate, after the death of his wife, to his sons only. The witnesses to the will were A. Huntington, G. Wheatland, and B. Merrill; and those to the codicil, G. Wheatland, B. Merrill, and R. Phillips, Jr.

The testator died on the 1st of June 1851, and on the 9th of the same month his will was presented for probate; and, after the usual notice, the probate court on the first Tuesday of July 1851 passed a decree in this form: " The instrument hereto annexed, being duly presented for probate as the last will and testament of John Waters," &c., &c., " and George Wheatland, one of the witnesses thereto subscribed, being present, makes oath that he saw the said John Waters, the testator, sign and seal the said instrument, and heard him declare the same to be his last will and testament, and that he subscribed his name as witness in the execution thereof, in presence of said testator, together with A. Huntington and B. Merrill," &c., it is therefore ordered, in the usual form, that the will be proved and recorded. From that decree no appeal was taken. The will only was recorded with the decree. But to the letters testamentary issued to the executor on the same day were annexed copies of both will and codicil.

After the death of the widow, the executor in 1865 presented a petition to the probate court, representing that proof of the codicil had been inadvertently omitted; upon which that court, after notice and hearing, decreed that the will already proved and this codicil should be approved and allowed as the last will and testament of the deceased. From this decree an appeal was taken by a child of the testator's daughter, who had died since the testator. At the hearing of this appeal, before *Gray*, J., it was shown that the codicil was duly executed and attested; and that the attention of the judge of probate was not called to it when the will was presented and proved. The question whether the codicil could now be admitted to probate was reserved, upon the facts above stated, for the consideration of the

full court, according to whose opinion upon that question this decree of the judge of probate was to be affirmed or reversed.

*D. Roberts*, for the appellant.

*G. Wheatland*, for the appellee.

GRAY, J. The decision of this case involves an interesting question of the extent of the powers of courts of probate, upon which there has been no express adjudication in this commonwealth, but to which a consideration of the precedents and authorities on the subject furnishes a satisfactory answer.

The jurisdiction over the probate of wills and granting administrations is peculiar. It was derived from the civil law through the ecclesiastical courts of England, and was granted by the Province Charter to the governor and council, who appointed judges of probate in the different counties as their delegates, from whom an appeal lay to them; and this appellate power was continued in the governor and council after the establishment of the State Constitution until the end of the Revolution, when it was transferred to this court, still however keeping the probate jurisdiction distinct from those of common law and equity. Anc. Chart. 32. Governor Pownall's Message to his Council in 1760, Quincy, 573. Constitution of Massachusetts, c. 3, § 5. St. 1783, c. 46. *Peters* v. *Peters*, 8 Cush. 540–542. The jurisdiction of courts of probate in Massachusetts, differing in this respect from those of England and of some other states, includes wills of real estate as well as of personal property. Anc. Chart. 32. *Laughton* v. *Atkins*, 1 Pick. 549, and cases cited. Rev. Sts. c. 62, § 32, and commissioners' note. Gen. Sts. c. 92, § 38.

Decrees of probate courts in matters of probate, within the authority conferred upon them by law, are conclusive upon the courts of common law, and cannot be reversed by writ of error or *certiorari*. *Dublin* v. *Chadbourn*, 16 Mass. 441. *Smith* v. *Rice*, 11 Mass. 513. *Peters* v. *Peters*, 8 Cush. 529. Nor can they be set aside in equity, even for fraud. *Kerrich* v. *Bransby*, 7 Bro. P. C. (2d ed.) 437; *S. C. nom. Herridge* v. *Bransby*, 2 Lee, 563. *Barnesly* v. *Powel*, 1 Ves. Sen. 287. *Allen* v. *Macpherson*, 1 Phillips R. 145, 146; *S. C.* 1 H. L. Cas. 211, 226

221, 225, 231, 234. *Gaines* v. *Chew,* 2 How. 641, 645, 646. *Sever* v. *Russell,* 4 Cush. 513. But the very authorities cited for the appellant to show the conclusiveness of an existing probate state that it may be repealed by the court which granted it. *Noell* v. *Wells,* 1 Lev. 235; *S. C.* 1 Sid. 359. *Allen* v. *Dundas,* 3 T. R. 125. 2 Smith's Lead. Cas. (5th ed.) 446.

By the practice of the English ecclesiastical courts, a will may be proved either in common form, *ex parte,* upon being presented by the executor; or in solemn form, after notice to all parties interested — which last accords with our practice in all cases of probate of wills. When a will is proved in common form, the court may, upon the subsequent application of any party interested and notice to the executor, at any time within thirty years, order that will, or a later one, if produced, to be proved in solemn form. 1 Williams on Executors, (5th Amer. ed.) 282, 300, 508. *Case of Executors,* Hetley, 77. *Ridgway* v. *Abington,* 3 Swab. & Tristr. 3. And probate of a will, granted upon the mistaken supposition that the testator is dead, may be revoked and cancelled by the court which granted it. *Goods of Napier,* 1 Phillim. R. 83.

Even when a will is proved in solemn form, it is within the jurisdiction of the court, for sufficient cause shown, to revoke the probate. The English authorities recognize, as sufficient causes of revocation, forgery of the will, fraud in obtaining probate, neglect or mismanagement in conducting the suit, or the production of a later will.

The courts of common law formerly went so far as to hold that the forgery of a will which had been admitted to probate could not be made the ground of an indictment until the probate had been revoked; but according to later and sounder decisions the probate, though conclusive, until set aside, of the disposition of the property, does not protect the forger from punishment. *Rex* v. *Vincent,* 1 Stra. 481. *Ramsbottom's case,* 1 Leach, (4th ed.) 25, *note.* *Rex* v. *Buttery,* Russ. & Ry. 342 *Rex* v. *Gibson,* Ib. 343, *note.*

In *Barnesly* v. *Powel,* 1 Ves. Sen. 254, a will of personalty which had been proved in the ecclesiastical court, (evidently in

solemn form, for it is said in the report that the time for appeal had lapsed, whereas, if it had been proved in common form only, the party could, as we have already seen, have had relief by citing in the executor, without being put to his appeal,) was shown to have been forged; and Lord Hardwicke decreed that the party should consent to a revocation of the probate and letters testamentary, so as to enable the ecclesiastical court to cause them " to be duly revoked according to the course of that court." *S. C.* Belt's Suppt. 150. The custom and right of that court to revoke any of its decrees obtained by fraud or surprise are also recognized in *Harrison* v. *Mitchell*, Fitzgib. 303; *S. C. nom. Harrison* v. *Weldon*, 2 Stra. 911; and in *Nicol* v. *Askew*, 2 Moore P. C. 92.

In a proceeding in the ecclesiastical court by the daughter of a deceased person, after citation to an executor named in a will of his, for letters of administration with that will annexed in the event of the executor's declining to take probate, attorneys intervened in behalf of the executrix named in a later will, then residing abroad, propounded this will, and prayed letters of administration with this will annexed to be granted to them in her behalf; but afterwards withdrew from the suit, and letters of administration with the first will annexed were thereupon decreed to the daughter. Upon evidence that the attorneys withdrew from that suit for want of funds and defect in their power of attorney, and because the daughter's husband assured them that he could prove the later will to be a forgery, Sir John Nicholl held that the executrix named in the second will, and *a fortiori* any other party interested under it, was not barred from re-propounding it; and said, " It must be remembered that there has still been no sentence, either for or against the validity of either will; and, although in ordinary cases, when the parties, being present, declare that they proceed no further, or duly authorize a practitioner to take that step for them, the court, as far as it legally can, will hold them bound; yet it would be unjust and inequitable not to make great allowance in this respect for a case circumstanced as the present is." *Trower* v. *Cox*, 1 Addams, 219. And in *Hayle* v. *Hasted*, 1 Curt. Eccl. 240, Sir

Herbert Jenner stated the rule to be that parties, whose interests were affected by a will previously proved in solemn form, might call in the probate and require the will to be re-propounded, upon showing " that there has been fraud or collusion practised to their prejudice, or that there has been neglect or mismanagement in the conduct of the suit."

In *Wilkinson* v. *Robinson*, 14 Jur. 72, the same judge decreed · probate of a later will, notwithstanding an earlier will had already been admitted to probate and the executrix named therein was out of the jurisdiction and could not be cited.    All the text books most relied on as guides in matters of practice of this kind state that probate of a will, either in common or solemn form, may be revoked on evidence of fraud in the proof, or of a later will.    Wentw. Off. Ex. 48.    Toller, 73, 74.    1 Williams on Executors, 399, 508.

In the analogous case of letters of administration, it is now well settled in England, and in many of the United States, that they may be revoked for sufficient cause by the court which granted them.    1 Williams on Executors, 509–512, 521, 524, *&* *notes*.    The English court of common pleas recently refused to stay an action at law by an administrator appointed by the ecclesiastical court, on affidavits that the deceased had left a will appointing an executor ; Mr. Justice Williams saying, " Where letters of administration have been improperly obtained or improvidently granted, the proper and only course is, to go to the ecclesiastical court to get them revoked." *Prosser* v. *Wagner* 1 C. B. (N. S.) 295.

Beside the opportunity of obtaining revocation of a decree of the ecclesiastical court in certain cases, the law of England gave a right of appeal in every case ; and after a decision in the highest court, the king in the discretionary exercise of his prerogative, upon the advice of the chancellor, might grant a commission of review.    1 Williams on Executors, 493 *&* *seq.*    *Matthews* v. *Warner*, 4 Ves. 186–211, *&* *notes ;*    *S. C. 5* Ves. 23. But the present existence here of such a discretionary power, either in the executive or the legislature, (though not unlike that of granting new trials and reviews in actions at law, which was

freely exercised by the general court of the Province, when un-
restrained by any written constitution,) is irreconcilable with the
separation of the executive, legislative and judicial departments
by the Constitution of the Commonwealth. *Merrill* v. *Sher-*
*burne*, 1 N. H. 199. *Lewis* v. *Webb*, 3 Greenl. 326. *Holden* v.
*James*, 11 Mass. 396. *Denny* v. *Mattoon*, 2 Allen, 378, 379, and
other cases there cited.

The records of the governor and council, sitting in a judicial
capacity as the supreme court of probate of the Province, throw
much light upon the practical construction of the extent of the
power of revocation incidental to the probate jurisdiction, and
show that such a power was frequently exercised in cases of
fraud or mistake, whether in every instance wisely we need not
inquire. A few examples, out of many which might be selected,
will afford sufficient evidence that the power was adopted, used
and approved in the Province, and usually practised on in the
courts of law, and therefore continued to exist after the adop-
tion of the Constitution, unless modified or taken away by the
legislature. Constitution of Massachusetts, *c.* 6, art. 6.

In 1705, upon a hearing before the governor and council of
" a challenge made " on behalf of Anthony Penn to an instru-
ment which had been admitted to probate in the county court
of Suffolk in 1688–89 as the will of his uncle, William Penn,
of Braintree, the question was put " whether there do appear in
the law a forgery or perjury to void the will," and resolved in
the negative. But upon a new petition in 1716 by the same
nephew and by a niece of the testator, alleging that after the
probate it was declared by one of the subscribing witnesses to
the will that it was forged and contrived after the testator's de-
cease by the person who presented it for probate, the governor
and council, after notice and hearing, made a final decree de-
claring the will null and void. Council Rec. 1705, fol. 176 ;
1716, fol. 465, 466, 477.

In 1725 Judge Samuel Sewall, (then chief justice of the Prov-
ince,) as judge of probate in Suffolk, revoked letters of admin-
istration which he had previously granted on the estate of
Benjamin Bates to his son of the same name, and granted

letters of administration *de bonis non* to Stephen Boutineau.
In "an action of trespass and ejectment" brought by Bouti-
neau to recover land of his intestate, the defendants claimed
title under a sale by the first administrator by license of court;
the jury upon a trial in the superior court of judicature returned
a special verdict that "if the judge of probate had power to
revoke the former letters of administration granted to Benjamin
Bates, and to grant letters of administration *de bonis non, &c.*
to the plaintiff," then they found for the plaintiff, otherwise for
the defendant; and the court gave judgment for the defendant.
Boutineau then presented a petition to the governor and coun-
cil, representing that by that judgment his administration was
disallowed and the power of the judge of probate to revoke the
former letters of administration and grant new ones in effect de-
nied; and praying that his letters of administration might be
confirmed or he be otherwise relieved; upon which the governor
and council, after notice and hearing, resolved that the letters
granted to him were " good, valid and effectual in the law."   He
then applied to the general court for a review of his action at
law, which after notice and hearing was granted; and another
trial was had in the superior court of judicature, resulting in a
verdict for him, upon which judgment was rendered.   *Boutineau*
v. *Billings,* Rec. 1726, fol. 71, 72.   Council Rec. 1725–26, fol.
348, 349, 355.   13 General Court Rec. 145, 184.

In 1757 a division of the estate of Phinehas Adams among
his heirs by commissioners appointed by Judge Hutchinson as
judge of probate was returned to the probate court of Suffolk
county; but the fees thereon not being paid, the usual form of
acceptance was not written upon it by the register, nor signed
by the judge, nor the return recorded, but it was filed with other
papers, and forgotten.   The parties, supposing the return to be
accepted in form, entered upon, improved, and made convey-
ances of the parts respectively assigned to them.   In 1762 Judge
Hutchinson (who was then also lieutenant governor and chief
justice of the Province, as well as judge of probate for Suffolk,)
discovered the mistake, and after notice and hearing entered and
signed an acceptance of the return *nunc pro tunc*, and submitted

the question of the validity of this acceptance, with other ques-tions in the case, to the supreme court of probate, who do not appear by the record to have directly affirmed it, (as they did the return upon the main question submitted to them,) but cer-tainly did not disapprove it, for the records of the inferior court of probate show that the estate was afterwards settled there ac-cording to this division. Supr. Prob. Rec. 1762, fol. 22–24. Suffolk Prob. Rec. 1763, lib. 61, fol. 199, 200; 1764, lib. 63, fol. 67.

In a subsequent case, both of the executors named in the will of William Brown, Jr. died after accepting the trust, the sur-vivor having appointed Joseph Sherburne his executor. Yet the judge of probate in Essex appointed John Brown administrator *de bonis non* with the will annexed of William. Sherburne ap-pealed to the supreme court of probate, who in 1766, after argu-ment by counsel, and against the opinion, though with the final concurrence, of Governor Bernard, (who had himself been a dep-uty registrar of one of the ecclesiastical courts in England,) de-creed that the administration be granted to Sherburne, and that upon his giving bond to the supreme court of probate for the per-formance of his trust, and taking out letters of administration, the decree of the judge of probate be reversed and the letters granted by him revoked. Sherburne, by writing filed in the supreme court of probate, declared himself ready to give such a bond, but apparently never gave one. Upon a new petition filed by Sherburne in 1771, after Judge Hutchinson had become governor, the supreme court of probate, after notice to John Brown, ordered its own decree to be set aside, and the decree of the judge of probate reversed unconditionally; upon the ground that the petitioner as executor of the surviving executor was by law executor of the first testator. Supr. Prob. Rec. 1766–71, fol. 46–48, 80, 81, and papers on file. That rule of the common law was abolished here after the Revolution. *St.* 1783, *c.* 24, § 19. Rev. Sts. *c.* 63, § 10. Gen. Sts. *c.* 93, § 9.

The authority of the probate court to revoke its own decrees is expressly recognized and declared by the statutes of the Com-monwealth in some cases. By *St.* 1817, *c.* 190, reënacted in

the Rev. Sts. *c.* 64, § 16, and Gen. Sts. *c.* 94, § 5, if after the grant of letters of administration as of an intestate estate, a will is duly proved and allowed, the first administration shall be revoked. This accords with the practice of the ecclesiastical courts in England, both before and since our Revolution. *Carolus* v. *Lynch*, 1 Lee, 13. *Baker* v. *Russell*, Ib. 167. *Prosser* v. *Wagner*, 1 C. B. (N. S.) 295. By the Rev. Sts. *c.* 83, § 31, reënacted in the Gen. Sts. *c.* 117, § 24, any warrant or commission for the appraisement of an estate, for examining the claims on an insolvent estate, for the partition of real estate, or for the assignment of dower, may be revoked by the judge of probate for any sufficient cause. This section was proposed by the commissioners on the Revised Statutes, as they state in their report, " only to prevent doubt, as it is supposed that the judge of probate already possesses the power here granted." Note of commissioners to Rev. Sts. *c.* 83, § 29. And the existence of such a power was recognized by the supreme court of the United States in *Thompson* v. *Tolmie*, 2 Pet. 163.

In *Clark* v. *Wright*, 3 Pick. 67, in which a will alone had been admitted to probate in the court below, from which a codicil had been fraudulently torn off, Chief Justice Parker said, " The court have no doubt that the codicil may and ought to be proved. It will be for the party claiming under it to consider whether he will make application here, or before the judge of probate, to have it allowed." As that case arose on appeal from the original probate, the codicil was allowed upon petition to this court in the same cause, so that it became unnecessary to consider the extent of the power of the probate court upon a new application. The final decree indeed affirmed the decree below which had admitted the will to probate, and then proceeded to declare the codicil also proved; 3 Pick. 69, *note ;* but probate decrees usually allow a will and codicil as distinct instruments, and the fact of their being such may affect their construction. See *Weddall* v. *Nixon*, 17 Beav. 166 ; *Goods of Greig*, Law Rep. 1 P. & D. 72 ; *Baillie* v. *Butterfield*, 1 Cox Ch. 392. In *Newman* v. *Jenkins*, 10 Pick. 516, this court said, " So long as the letters of administration stand unrecalled, they are

evidence of the death." In *Emery* v. *Hildreth*, 2 Gray, 231, 232, Mr. Justice Thomas said that the validity of a decree of the probate court, appointing an administrator, if objected to by one of the parties entitled to administration, on the ground that he had no notice, " could be tried only in the probate court, or r this court sitting as the supreme court of probate."

In *Stetson* v. *Bass*, 9 Pick. 30, Mr. Justice Wilde, delivering the opinion of the court, said, " We think there can be no doubt of the right and authority of a judge of probate to open an account settled, for the purpose of correcting a manifest mistake. In the proceedings of all courts errors and mistakes will occur, and frequently without the fault of either party, and justice requires that some method should be provided for the correction of such errors and mistakes, in whatever court they may occur. In courts of common law jurisdiction the remedy is by writ of error, motion for new trial, or application for a writ of review; but these remedies are not applicable to the proceedings of a court of probate. In that court, when a mistake is made in the settlement of an account, the course is to apply to the judge of probate for the correction of the mistake, by petition, or to state the amount claimed in a new account; unless when the mistake is discovered the party has a right of appeal, by which it may be corrected in this court. This practice seems to be well settled, and in several cases has received the sanction of this court. It is indeed essentially necessary for the furtherance of justice, and ought not to be too strictly limited." The authority of courts of probate to correct errors in their decrees on administration accounts, even when in terms final, upon clear proof of fraud or mistake in a point not once actually presented and passed upon, has been repeatedly sustained by this court and by the highest courts of Vermont and New York, and is now affirmed in this state by statute. *Field* v. *Hitchcock*, 14 Pick. 405. *Boynton* v. *Dyer*, 18 Pick. 5. *Adams* v. *Adams*, 21 Verm. 166, 167, and cases cited. *Pew* v. *Hastings*, 1 Barb. Ch. 452. *Sipperly* v. *Baucus*, 24 N. Y. 46. Rev. Sts. *c.* 67, § 10. Gen. Sts. *c.* 98, § 12. A court of probate has no more power by a decree establishing one testamentary instrument to preclude

the subsequent probate of a later one never before brought to its notice, than by a decree approving one account to discharge an administrator from responsibility for assets not actually accounted for.

In none of the judgments of this court, to which the appellant has referred, was it necessary to pass upon the power of the court of probate to revoke or correct its own decrees.

The decision and opinion in *Peters* v. *Peters*, 8 Cush. 529, were limited to the question of the appellate powers of this court, either as a court of probate, or as a court of common law, in probate matters. In the very passage cited for the appellant, Chief Justice Shaw limited his statement accordingly, saying, " We believe that when the legislature vested this jurisdiction in judges of probate, and created a supreme court of probate with a full appellate jurisdiction, allowing an appeal within a short limited time, with a power in this court to enlarge that time in case of accident or mistake, they did all they intended to do, in providing for the revision of decrees in probate matters by appeal." 8 Cush. 542, 543. The chief justice had already said at the outset of his elaborate discussion of that question, " It may be proper to premise that the peculiar and appropriate jurisdiction of the probate courts in this commonwealth, embracing the probate of wills, granting administrations, and their incidents, is precisely that which was and still is exercised by the ecclesiastical courts of Great Britain." 8 Cush. 536.

In *Dublin* v. *Chadbourn*, 16 Mass. 433, the only point decided was that the decree of a probate court upon the probate of a will was conclusive in an action at law. The case of *Crippen* v. *Dexter*, 13 Gray, 330, involved only the conclusiveness of the decree of a probate court of another state upon the validity of a will, on a subsequent application to prove the will in this state ; and the mention of the importance of making proof of a will, once for all, and for all purposes, inasmuch as it determines the condition of a deceased person's estate, and whether it must be settled as an estate testate or intestate — though showing strong ground for holding the probate of a will in one court to be

conclusive upon all property, real as well as personal, everywhere — cannot be held to imply that errors in that probate, arising out of mistake or fraud, are beyond all remedy in the same court. There is no reason why the probate of a will which does not express the last intentions of the testator should be held irrevocable, more than letters of administration issued upon the supposition that the deceased died intestate; and it has been directly adjudged by this court that a will may be proved even thirty years after the death of the testator, although original administration could not by statute be granted after twenty years. *Bourne* v. *Greenleaf*, Essex, 1802; *S. C.* cited 1 Pick. 117, *note;* 3 Dane Ab. 452. *Shumway* v. *Holbrook*, 1 Pick. 117. *Marcy* v. *Marcy*, 6 Met. 370. *St.* 1783, *c.* 36, § 10. Rev. Sts. *c.* 64, § 13.

The cases of *White* v. *Clapp*, 8 Met. 365, and *Jenks* v. *Howland*, 3 Gray, 536, touched only the point that decrees of the probate court in the partition of real estate, of which it had jurisdiction by statute, but in which it had exceeded its powers, might be treated as void, and no bar to a writ of entry or a new petition for partition. In *Jochumsen* v. *Suffolk Savings Bank*, 3 Allen, 87, the grant of administration on the estate of a living person was held to be beyond the jurisdiction of the probate court, and not binding on him in an action at law, as was fully demonstrated on principle and authority; and the statement on page 95, that the only opportunity for revising or modifying a decree of the court of probate was by appeal within thirty days, or petition to this court for leave to appeal within one year, was not necessary to the decision.

The *dictum* of Chief Justice Marshall in *Griffith* v. *Frazier*, 8 Cranch, 25, that " letters testamentary, when once granted, are not revocable by the ordinary," must be applied to the case before him, in which the only ground alleged for the appointment by the ordinary in South Carolina of an administrator *de bonis non* was the executor's absence from the state, which had been held by the highest court of that state to be no sufficient ground for revoking the letters testamentary; and if understood as laying down a universal rule, is inconsistent with subsequent judgments

of the supreme court of the United States, recognizing the power of a court of probate to revoke the probate of a will, or admit a later will to probate, which by reason of fraud or otherwise had not been brought to its knowledge at the time of approving the earlier will. *Gaines* v. *Chew*, 2 How. 641, 646. *Gaines* v. *Hennen*, 24 How. 567.

The authority of courts of probate in this respect has been fully sustained in the courts of many states. In *Bowen* v. *Johnson*, 5 R. I. 119, 120, the supreme court of Rhode Island held that the power to revoke a probate once granted, although nowhere expressly recognized in the statutes of that state, was a just and necessary power to be implied from the statute conferring general authority to " take the probate of wills and grant administration on the estates of deceased persons," and might be exercised incidentally to an application for the probate of a later will. In *Muir* v. *Trustees of Orphan House*, 3 Barb. Ch. 481, Chancellor Walworth, exercising an appellate probate jurisdiction, said, " The probate of a will of personal property, whether such probate was obtained by a summary or a plenary proceeding, if granted by the proper testamentary court, is conclusive evidence of the due execution of such will, until such probate has been called in or annulled by such court, or has been reversed on appeal to the proper tribunal " — thus recognizing the power of the surrogate to call in or annul the probate, notwithstanding that by the statutes of that state (as by our own) every will was proved in solemn form, after citation to all parties interested; and that the next of kin, if they had not appeared and contested the will upon the probate thereof, might come in and do so within one year. The decree of the judge of probate in the case before us is very like one passed by Mr. Surrogate Bradford in the corresponding court for the county of New York, in *Campbell* v. *Logan*, 2 Bradf. 90, allowing a codicil to be presented for probate, after the will had been established and allowed on a previous day, and, upon due proof, to be admitted to probate as together with the will constituting the last will and testament of the deceased. The courts of appeals of Maryland and Virginia have held that, notwithstanding any

lapse of time after the probate of a will, a later will of the same testator might be admitted to probate by the court which granted the first probate. *Clagett* v. *Hawkins*, 11 Maryland, 381. *Schultz* v. *Schultz*, 10 Grat. 358. The supreme court of North Carolina has held that letters testamentary issued to two executors named in a will, one of whom was made sole executor by a codicil, might be revoked as to the other by the county court of probate of its own motion at a subsequent term. *County Court of Mecklenburg* v. *Bissell*, 2 Jones, 389. And in New Jersey and Alabama it has been held that a probate granted without notice might be vacated by the court on the application of a party entitled to notice. *Lawrence's Will*, 3 Halst. Ch. 215. *Roy* v. *Segrist*, 19 Alab. 810.

In the face of these authorities it is impossible to deny the power of a court of probate to approve a subsequent will or codicil, after admitting to probate an earlier will by a decree the time of appealing from which is past; or to correct errors arising out of fraud or mistake in its own decrees. This power does not make the decree of a court of probate less conclusive in any other court, or in any way impair the probate jurisdiction; but renders that jurisdiction more complete and effectual, and by enabling a court of probate to correct mistakes and supply defects in its own decrees, better entitles them to be deemed conclusive upon other courts. There is no reason to apprehend that such a power may be unjustly exercised. It is vested in the same court which is intrusted with the original jurisdiction over all probates and administrations. No decree admitting a later instrument to probate, or modifying or revoking a probate already granted, can be made without notice to all parties interested; every party aggrieved by the action of the probate court has the right of appeal to this court; and an application of this nature, when one will has already been proved, would never be granted except upon the clearest evidence. The new decree would not necessarily avoid payments made or acts done under the old decree while it remained unrevoked. *Allen* v. *Dundas*, 3 T. R. 125. *Appeal of Peebles*, 15 S. & R. 39. *Kittredge* v. *Folsom*, 8 N. H. 98. *Stone* v. *Peasley's Estate*, 28 Verm. 720. 1 Williams on Executors, 520, 522.

The report now before us presents no question upon the extent of the operation of such a new decree passed after the estate has been conveyed or improved; and shows a proper case for the exercise of the power.

The will and codicil were both executed and attested accord- ing to law. No fraud is shown in either party. Nor can it be said that either has been guilty of such want of diligence as should forfeit any rights which that party has or represents. The executor may well have been misled by the letters testa- mentary issued to him under the seal of the probate court, an- nexed to which was a copy of the codicil as well as of the will; and until the death of the widow and tenant for life there was no difference between the will and the codicil in the disposition of the estate. On the other hand, the descendants entitled in remainder under the will would naturally rely upon the record of the probate court, on which the codicil did not appear. That record (as well as the facts proved at the hearing, which would hardly be admissible if they contradicted it,) shows that the codicil was not brought to the notice of the judge of probate when he approved the will. The mistake may have been occa- sioned by inattention or oversight of the counsel or the testifying witness, or possibly of the judge; but the delay in discovering it is fairly attributable to the carelessness of the register in annex- ing a copy of the unproved codicil to the letters testamentary.

This mistake cannot be corrected by any proceeding at com- mon law or in equity. The time for appealing from the first decree, approving the will, is long since past. This court has no original probate jurisdiction, and in the exercise of its appellate jurisdiction from the probate court can only make such decrees as that court should have made. Gen. Sts. *c.* 117, §§ 7, 8, 16. *Grinnell* v. *Baxter*, 17 Pick. 383. Unless therefore the last decree of the judge of probate, approving the codicil, can be sustained, the parties claiming under the codicil are without remedy.

If the codicil had been on a separate paper, not known to the parties at the time of the probate of the will, but now recently discovered, there could be no doubt of the power and the duty of the probate court to admit it to probate. The fact that it is

on the same paper does not change the reason of the thing, as it has never in fact been passed upon by the judge of probate.

The lapse of time since the death of the testator and the probate of the will should lead the court closely to scrutinize the evidence offered, but is no positive bar. If no will had yet been proved, the lapse of time would not prevent both will and codicil from being proved now. The fact that a will has been already proved affords no reason for imposing stricter limitations upon the proof of a codicil, whether the omission to prove it sooner has been occasioned by ignorance of its existence, by fraudulent suppression of it, or by an innocent but mistaken belief that it has been already proved. It would be peculiarly unjust to make any difference in this case on account of the former probate of the will, inasmuch as that will gave the testator's children after the death of his widow the same interest in the land which they would have had if he had died intestate, and they would therefore, according to a familiar rule of law, take the estate as his heirs and not by virtue of the will. *Ellis* v. *Page*, 7 Cush. 161. *Sedgwick* v. *Minot*, 6 Allen, 171.

We are therefore satisfied that the decree of the judge of probate, now appealed from, is correct in principle, and according to precedent. But as the case involves an important question of law, upon which the appellant might reasonably desire the opinion of this court as the supreme court of probate, the common rule in probate causes must be followed, and no costs allowed to either party. *Osgood* v. *Breed,* 12 Mass. 536. *Woodbury* v. *Obear,* 7 Gray, 472. *Decree affirmed.*