NATHANIEL CLAGETT, Exc'r of JAMES HAWKINS, Jr., *vs.* ELIZABETH A. HAWKINS.

An application to the orphans court, simply to *revoke letters testamentary*, can only be made within the *same time*, after the party applying has notice that they have been granted, as that provided by law, within which an *original application* for letters is to be made.

But *no lapse* of time will bar an application for the revocation of probate of a will, and the revocation of an order admitting papers to probate as a will, necessarily revokes the letters testamentary previously granted thereon.

An *unexecuted* will, and certain *undelivered* deeds of trust, which the deceased had declared constituted a prospective settlement of his worldly affairs, found, after his death, *wrapped up together*, in his secretary, among his papers, cannot be admitted to probate as his *will*, the proof showing that he stated to the draughtsman of these papers, that *when he delivered the deeds, he would execute the will*, and that he had *ample opportunity, before his death, to have done so*.

APPEAL from the Orphans Court of Montgomery County.

This appeal was taken from an order of the court below, passed on the 12th of May 1857, rescinding the probate of certain papers, as the last will and testament of James Hawkins, Jr., which had, as alleged, been granted on the 22nd of January 1856, and declaring the same not to be the last will and testament of said Hawkins, and revoking letters testamentary thereon, which had been issued to the appellant on the 29th of January 1856. The facts of the case are sufficiently stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Robt. J. Brent* and *W. V. Bouic* for the appellant:

The appellee is *estopped,* by her own conduct and acts in the premises, from impeaching the *probate* of this will and the letters granted to the appellant. 1 *Greenlf. on Ev., sec.* 207. 7 *Md. Rep.,* 201, *Burgess vs. Lloyd.* She *assented,* in her answer, to the petition to admit these papers to probate, that they should be so admitted, and subsequently *renounced* her right to letters testamentary, and assented to the grant of such letters to the appellant, who has gone on, under them, to administer upon the estate. All the evidence in the cause shows that this probate was made by the consent of *all parties* interested, and especially by the active concurrence of the appellee. The recording of the papers as the *will* of the deceased testator, is sufficiently evidenced by the endorsement of the register of wills, and the grant of letters testamentary. 1 *Greenlf. on Ev., secs.* 19, 210, *note* 3. 9 *G. & J.,* 15, *State vs. Harrison.* We insist, then, that these papers, consisting of the unsigned will and undelivered deeds, *constitute a sufficient will* of *personal property.* 1 *Wms. Excrs.,* 54, *note (n)* 61. 3 *Md. Rep.,* 134, *Plater vs. Groome.* The testimony brings the case within the principles laid down by these authorities. The probate of these papers was conclusive as to the personalty, (2 *Gill,* 42, *Hannon vs. The State,*) and was *prima facie* at least as a will of real estate. *Act of* 1831, *ch.* 315, *sec.* 1.

7 *Md. Rep.*, 65, *Dorsey vs. Warfield.*  But, if there was any error in originally admitting these papers to probate, the proper remedy *was by appeal* from the order admitting them to probate; the decisions of the orphans court cannot be collaterally impeached, but must be reviewed by appeal, the only remedy allowed by law. *Act of* 1798, *ch.* 101, *sub-ch.* 15, *sec.* 17. 6 *Md. Rep.*, 288, *Edelen vs. Edelen.* The question, therefore, whether these papers *ought to have* been probated, is not before this court on this proceeding. The probate being after answer filed by the appellee, is conclusive as a decree on plenary proceedings, (4 *Md. Rep.*, 385, *Pegg vs. Warford*,) and having been procured by the active concurrence of the appellee, she has no right to contest the probate. 5 *Md. Rep.*, 324, *Mauver vs. Naill.*

But, treating the petition to revoke as a bill of review, it is insisted that the orphans court has no constructive power to review its own decisions; and if it had, any proceeding in the nature of a review, must be instituted in the same period which is allowed for an appeal. This principle is conclusively settled by the case of *Edwards vs. Bruce*, 8 *Md. Rep.*, 395. The case of *Robey vs. Hannon*, 6 *Gill*, 463, is no authority against us, because, in that case, there was no application to revoke the letters *in toto*, but only *pro tanto*, whereas, here, the application is to revoke the letters altogether; and, besides, the party in that case applying for the revocation of the probate of the will, was *no party* to the plenary proceedings on which it was admitted to probate. It is, therefore, *res adjudicata* by the case of *Edwards vs. Bruce*, that the application to *revoke these letters* comes *too late*. These letters, therefore, granted upon this *will*, must stand, and if *they* cannot be revoked, how can the *probate of the will*, on which the letters alone rest, be revoked?

*Jno. T. Vinson* and *Richard J. Bowie* for the appellee:

1st. These supposed testamentary papers are not the last will of the deceased, even as to *personal estate*, and there is no legal proof that they were *intended* by him to operate *as such.* In order to make such papers a will, it must appear that the

deceased possessed *animum testandi* at the time they were written, and that he intended they should be his will *as they stood*, without looking to any *thing further* to be done in order to *perfect them.* 4 *H. & J.*, 166, *Tilghman vs. Steuart.* 4 *Ves.*, 186, *Mathews vs. Warner,* and *notes.* 10 *Leigh.*, 125, *Rochelle vs. Rochelle.* 1 *Grattan*, 454, *Waller vs. Waller.* 6 *Watts*, 353, *Murry vs. Murry.* 1 *Merivale*, 503, *Walker vs. Walker.* 1 *Wms. Exc'rs, (2 Amer. Ed.,)* 51 to 58. 3 *Md. Rep.*, 134, *Plater vs. Groome.* There is clearly no testimony to show the *testamentary* character of the *deeds*; but on the contrary, not only the papers themselves, but the proof shows, they were intended to operate *inter vivos.* As to the *will* also, there is positive proof that he intended *formally to execute* it, and that he had ample time and opportunity to do it, and was not prevented by the act of God from accomplishing it. The draughtsman who prepared all these papers, proves that the deceased told him that *"when he delivered the deeds of trust up he would then execute his will."*

2nd. There was, in fact, no probate, in common or solemn form, of the papers endorsed *"Rec'd,"* by the register, and sent out by him with letters testamentary, as an exemplification of the will of the deceased, and therefore the letters issued improvidently and should have been revoked. When a will is to be proved in solemn form, all persons interested should be cited to be present at the probation and approbation of the testament, witnesses should be sworn and examined, and their depositions committed to writing; and in case the proof be sufficient, the judge, by his sentence or decree, pronounces for the validity of the testament, which sentence or decree of the court, we contend, under the act of 1818, ch. 204, sec. 3, must be reduced to writing, and signed by the judges of the orphans court and filed as part of their proceedings. We hold; that the language of this act of Assembly is mandatory and must be observed. The orphans courts are courts of limited jurisdiction, and can exercise no power or authority not expressly given to them by act of Assembly, and where an authority or power is specially delegated, it must be strictly pursued. Now in this case the decree never was reduced to writing, and we

Clagett, Exc'r of Hawkins, *vs.* Hawkins.

therefore conclude, that these papers never were admitted to probate in solemn form. Furthermore, we think this view of the case, *that there was no probate,* is strongly confirmed by the uncertainty as to what was intended by the verbal order of the court, endorsed by the register on these papers, "Rec'd by order of court, 22nd January 1856."

3rd. But suppose we are mistaken, and the court should determine that these papers have been admitted to probate, were we precluded from inquiring into the proceedings at the time our petition was filed, the 27th of March 1857? The appellant contends, our application came *too late.* But the court will remember this is not an application to revoke letters, but an application to the court, to reduce to writing and sign their decree and incidentally to revoke the letters, because if there was *no will* and no probate, there was nothing to support the letters and the court had the power and ought to revoke them. 2 *H. & G.,* 51, *Raborg vs. Hammond.* 9 *Gill,* 463, *Owings vs. Bates.* 6 *G. & J.,* 349, *Ward vs. Thompson.* The scope of our application was not simply to revoke the letters, but also to revoke *the probate* of the will, and should the court consider these were *plenary proceedings,* upon *contest,* we still insist, that the proceedings were open and undecided, (3 *Md. Rep.,* 230, *Hanna vs. Munn, et al.,*) and that our application was *in time;* for it is well settled, that *no lapse of time* will bar an application to revoke probate of a will, 6 *Gill,* 463, *Robey vs. Hannon.* 3 *Phillimore,* 3, *Satterthwaite vs. Satterthwaite. Ibid.,* 405, *Finucane vs. Gayfere.* The case of *Edwards vs. Bruce,* 8 *Md. Rep.,* 387, was simply an application for the revocation of letters *which had been legally granted in the discretion* of the court, and acquiesced in by the party who sought to vacate them, and is not, therefore, analogous to the case now under consideration, where the application is, in effect, to revoke *probate of the will.*

Le Grand, C. J., delivered the opinion of this court.

This is an appeal from an order of the orphans court for Montgomery county, revoking letters testamentary, which had been granted to appellant on the estate of James Hawkins Jr.,

on the 22nd of January 1856. The order appealed from is dated the 12th of May 1857. The record shows that James Hawkins died, on or about the 1st of January 1856, possessed of large real and personal estate, leaving a widow, (the appellee,) and a daughter, Ara J. Hawkins, since intermarried with William S. Offut, and several grandchildren, (the issue of a son and daughter who died before he did,) all of which grandchildren are minors. In the fall of 1852, the deceased had draughts made of four papers; one purporting to be a will, including dispositions of real and personal estate, as therein mentioned, and three deeds in which he disposed of other portions of his real and personal estate, in trust for himself for life, with remainder to his daughter and grandchildren. These papers, he declared to the draughtsman, constituted a prospective settlement of his worldly affairs, and that it was made on consultation with his wife, who was satisfied with the arrangement; "that the reason he did not make his last will cover all the provisions of the deeds of trust, was, that his wife had consented to execute these deeds of trust in his lifetime, and thus his wish would be carried out without any interference from any source, and that when he delivered the said deeds of trust up, he would then execute the last paper, (the will,) and they would be satisfactory to himself." On the 26th of October 1853, he and his wife united in the execution of two of the deeds. By the draught of his will he appointed the appellant and his wife his executor and executrix. This paper, unexecuted, together with the deeds, remained in his possession until his death, and they were all found wrapped up together in his secretary among his papers. On the 10th of January 1856, Ara J. Hawkins, filed her petition, accompanied by the draught of the will, asking that the appellant and appellee named as executors therein, should show cause why the same should not be admitted to probate. This was answered by appellant, detailing the conversation had by him with the deceased, and by the appellee, claiming that one paper of the series should not take effect, unless the whole stood as a full disposition, as well of the realty as the personalty. On the 22nd of January 1856, without any order in writing, the pa-

per marked A, including B C D, (the deeds,) by verbal authority were, it is contended, admitted to probate by the endorsement of the register of an envelope containing all four papers, as follows:—"Will of James Hawkins, Jr., filed 11th January, William Thompson of R., Register. Rec'd by order of court January 22nd 1856, William Thompson of R., Register. Recorded in Liber W. T. of R., No. 2, folio 251, William Thompson of R., Register."

On the 29th of the same month, the appellee filed her renunciation of letters of administration, and on the same day, letters were granted to the appellant with copies of exhibit A, including B C D, and depositions annexed, as a copy of the will of the deceased. In March 1857, the appellee filed her petition, alleging, that the proceedings were still open and undecided, and that no decree or order had been passed, and praying the court to pass such an order or decree in the premises, as was required, and to revoke the letters granted to the appellant. After answer of appellant denying the right of the court to review their proceedings, the court passed the order declaring the papers filed, not to be the last will and testament of the deceased, and revoking the letters of the appellant. It is from this order this appeal is taken.

Were this a case simply for the revocation of letters of administration, we could not hesitate to say, the application was too late. The case of *Edwards Ad'mr of Norman Bruce, vs. Upton Bruce*, 8 *Md. Rep.*, 387, is conclusive on this point. The application is not, however, so restricted; its principal aim is to have declared, that certain papers, claimed to be so, are not the last will and testament of James Hawkins, Jr.

The proposition, that no lapse of time will exclude the inquiry, whether certain papers constitute the will of a party, is supported by almost any number of authorities; that of *Finucane vs. Gayfere*, 1 *Ecclesiastical Reports*, 425, will suffice for this case.

But apart from this, it is plain to us, that neither, nor all the papers filed in the office of the register of wills, when taken together, can be considered as the will of James Hawkins, Jr. The deeds were never, as he said, delivered, nor was the

paper purporting to be the will ever executed, nor as he, in substance said, intended to be, until the delivery of the deeds by him. It had not the formalities required by the statute to pass realty, and was not accompanied by such circumstances as would make it a good testamentary disposition of personalty. There was an absence of the *animus testandi.* If it had been his purpose to execute it as his will, the testimony shows he had ample opportunity to have done so. The circumstances of the case are not near as strong as were those in the case of *Plater vs. Groome, 3 Md. Rep.*, 134, and yet this court there held, the paper claimed to be testamentary in its legal operation not so in fact. We refer to that case, and the principles there recognized, as decisive of this controversy.

In regard to the fact, that the appellant has partially administered the estate of Hawkins, and the other one, that the appellee is, and has been in the enjoyment of some of the property bequeathed to her, in the papers designated by letter A, cannot, in any manner, prejudice the interests of the appellant. In the future administration of the estate he will be allowed, by the orphans court, for all his acts honestly performed under its authority, and the appellee will be compelled to account for any property which she may have received. The revocation of the order, admitting to probate the papers A B C D, as the will of James Hawkins, Jr., necessarily revokes the letters granted to the appellant; and any evidences of indebtedness to the estate of Hawkins which he may have, pass to the person to whom letters may hereafter be granted.

*Order affirmed, costs to be paid out of the estate.*