(Decided 9th March, 1886.)

JOHN W. EMMERT *vs.* DANIEL B. STOUFFER, and JOHN H. STOUFFER.

*Orphans' Court—Letters of Administration—Revocation of Letters—Production of Will—Judgment in Rem—Question of Probate—Effect of Judgment of Orphans' Court—Specific performance of Contract of Purchase.*

The law confides to the Orphans' Court, and to no other tribunal, the authority to grant letters of administration on the estate of a deceased person; and in performing this duty the Court is enjoined to make judicial inquiry, "whether or not the party dying left any will;" and it is forbidden to grant administration unless such dying intestate is proved to its satisfaction.

Where letters of administration have been granted, it is competent for the Orphans' Court in a proper case to revoke them; and the statute law expressly requires it to revoke them if a will for the disposition of the personal estate shall afterwards be proved ac-

cording to law, and the executor named therein shall make due application for letters testamentary and execute a bond.

Letters of administration do not prove the intestacy of the deceased, when a paper purporting to be his will is propounded for probate.

The grant of letters of administration is a judgment *in rem*, which establishes conclusively the legal status of the administrator, and invests him with rights belonging to that capacity.

The Orphans' Court has no jurisdiction to determine the question of probate, until the will is exhibited for the purpose of having it proved.

A paper-writing purporting to be a last will and testament was produced in the Orphans' Court by the two sons named therein as executors, and who were the only children and heirs-at-law of the deceased, with a disclaimer on their part that they offered it for probate. Accordingly they made application for the grant of letters of administration upon the estate of their deceased mother. The Court heard such testimony as was offered by the petitioners who assailed the will; but no opportunity was offered to those persons who were interested in maintaining it. The Court thereupon ruled that the paper-writing was not the last will and testament of the deceased, and granted letters to one of the petitioners, the other renouncing in his favor. HELD:

That the judgment of the Orphans' Court was in legal effect merely a grant of letters of administration, and was wholly without effect upon the paper as a will.

A Court of equity will not compel a purchaser to take a title which is not free from reasonable doubt, and which might in reasonable probability expose him to the hazards of litigation.

APPEAL from the Circuit Court for Washington County, in Equity.

On the 30th of January, 1885, the following petition, which was sworn to, was filed in the Orphans' Court of Washington County:

The petition of John H. Stouffer and Daniel B. Stouffer respectfully shows unto your Honorable Court, that Mrs. Eliza Stouffer departed this life on the 15th day of January, 1885, and that your petitioners are her sons, and the

only two children of the said deceased and her nearest of kin, and are entitled under the Testamentary Laws of the State of Maryland to letters of administration. They further represent, that the said Eliza Stouffer has left no last will and testament, to their knowledge or information, except a paper dated the third day of September, 1884, purporting to be a last will and testament, which is herewith produced to the Court, but that they do not present the said paper for probate, for the reason that at the time it was signed by the said Eliza Stouffer, to wit, on the third day of September, 1884, she was not capable of making a valid deed or contract; that age, disease and infirmity had rendered her incapable for the transaction of any business; and that the said paper-writing, purporting to be the last will and testament of the said Eliza Stouffer, is not her last will and testament, but the product of a mind rendered incompetent by a disease known as the "softening of the brain;" and your petitioners do now apply to your Honorable Court for letters of administration upon the estate of their deceased mother, who, during her life-time, resided in Washington county, and died in said county at the time aforesaid mentioned.

The paper-writing referred to in the foregoing petition, and purporting to be a last will and testament is as follows:

"I, Eliza Stouffer, of Washington County, State of Maryland, do hereby make this my last will and testament:

"First. I direct my just debts and funeral expenses to be paid.

"Second. I appoint my two sons, John H. Stouffer and Daniel B. Stouffer, executors of this, my will, and I hereby authorize, empower and direct the said executors to sell all my estate, one-half thereof to be invested by my said executors, the interest of which shall be paid to my son, John A. Stouffer, for and during his natural life, and

at his death, the said one-half to be equally divided amongst his children; the child or children of any deceased child of my said son, John H., to take the parent's share; and the other half of my estate, or the proceeds of the sale thereof, to be invested by my said executors, and the interest thereon to be paid to my son, Daniel B. Stouffer, for and during his life, and at his death, the said one-half to be equally divided amongst his children; the child or children of any deceased child of my said son, Daniel B. Stouffer to take the parent's share.

"Witness my hand and seal, this third day of September, 1884.

ELIZA STOUFFER, [Seal.] "

The witnesses to the foregoing paper-writing were Susan Stouffer and Sarah A. Garlock.

On the day of the filing of the petition the Orphans' Court passed the following order :

The above petition and affidavit having been read and considered, it is thereupon, this 30th day of January, 1885, ordered by the Court, that the witnesses to the said paper, purporting to be the last will and testament of Eliza Stouffer, and such other persons as the petitioners may desire, be summoned to appear in Court on Wednesday, the 4th day of February next, when the Court will enquire into the matters and things set forth in said petition.

After examining witnesses the Orphans' Court proceeded to pass the following order:

In the matter of the application of John H. Stouffer and Daniel B. Stouffer for letters of administration on the estate of Eliza Stouffer, deceased:

The Court having heard the testimony of Mrs. Susan Stouffer and Mrs. Sarah A. Garlock, and other witnesses, concerning the paper purporting to be the last will and testament of the said Eliza Stouffer, and the Court being

satisfied that at the time the said paper was executed by said Eliza Stouffer, she was not capable of making a valid deed or contract, and that the said paper-writing is not her last will and testament, It is thereupon adjudged, ordered and decreed by the Orphans' Court of Washington County, this fourth day of February, 1885, that the said Eliza Stouffer died intestate, and that letters of administration be, and the same are hereby, granted upon her estate to Daniel B. Stouffer, the said John H. Stouffer having filed a renunciation, and recommended the said Daniel B. Stouffer.

The case is further stated in the opinion of this Court.

The cause was submitted to ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*W. M. McDowell*, for the appellant.

*Henry H. Keedy*, for the appellees.

The Orphans' Court was the proper tribunal to determine whether or not the deceased died intestate. Art. 9, sec. 16, of the Code, requires the person applying for administration to prove such dying intestate to the satisfaction of the Court.

The determination of the Orphans' Court that Mrs. Eliza Stouffer died intestate was a judicial act. It was an adjudication of a Court of competent jurisdiction, and "is conclusive upon the question decided, and cannot be impeached on the ground of informality in the proceedings or error or mistake of the Court, in the matter on which they have adjudicated." *Raborg vs. Hammond*, 2 *Har. & Gill*, 42. No other Court could determine the question of intestacy.

The paper, relied upon by the appellant, was before the Orphans' Court, and that Court in its decree and order says that it was not the last will and testament of Mrs.

Stouffer. This determination of the Court, the appellant says, is not conclusive, because, the parties who would have been legatees under said will and have received legacies after the life estate, were not summoned into Court; although it is admitted that they are non-residents of Maryland and some of them infants.

The proceedings and judgment of a Court of probate, in granting administration, admitting or rejecting instruments to probate, as wills, &c., are proceedings *in rem.* The judgment is concerning the thing. And whenever the Court has jurisdistion, and investigates and determines the question, its adjudication is conclusive upon all parties, whether they had knowledge or not, and can only be impeached for fraud. See *Worthington, et al. vs. Gittings, et al.,* 56 *Md.,* 548 ; *Pinson vs. Ivey,* 1 *Yerger,* 349.

In 2 *Smith's Leading Cases,* (5th *Am. Ed.,*) 593, in notes on the *Duchess of Kingston's Case,* the annotator says: "A grant of *probate* or of *administration* is in the nature of a decree *in rem.*    *    *    *    *    Accordingly such grant of probate or administration is conclusive against all the world." See *Allen vs. Dundas,* 3 *Term R.,* 130 ; *In re Broderick's Will,* 21 *Wall.,* 503 ; 2 *Greenleaf on Evidence, sec.* 672 ; *Freeman on Judgments, sec.* 607; *Noel vs. Wells,* 1 *Levinz,* 235 ; 1 *Jarman on Wills,* 143, (*Ed. of* 1880.)

The Code, (Art. 93, secs. 315 to 321 inclusive) guards the heirs-at-law against the probate of wills and gives them an opportunity to contest the same, but makes no provision for notice to persons who are not heirs-at-law.

The appellees could have done nothing more than they did do. They made application for letters of administration.—They had a right to do so. They acted in good faith; presented the pretended will and gave the Court an opportunity to make a full and fair investigation. No fraud or imposition is alleged and none proven. There being no fraud or collusion, and the determination of the

Orphans' Court that Eliza Stouffer died intestate, being an adjudication of a Court of competent jurisdiction, *"it must stand firm and perpetual."*

Sec. 320, of Art. 93, of the Code, gives the right to any person, where the probate of any will has been taken without contest, to file his petition and have the case again examined and heard, but where the Court has refused probate there is no provision to open and rehear it. In the absence of fraud it is a finality. *Schultz vs. Schultz,* 10 *Gratt.,* 368.

BRYAN, J., delivered the opinion of the Court.

The appellees made a contract with the appellant to sell him a certain house and lot in Hagerstown. They claimed title to it as heirs-at-law of their deceased mother. It appeared that Mrs. Eliza Stouffer, the decedent, had in her life-time executed a certain paper-writing in the form and with the solemnities of a will capable of passing the title to real and personal estate ; and in it the appellees were named as executors. They were directed to sell all of her estate and invest the proceeds ; the interest on one-half thereof was to be paid to the appellee John, during his life, and at his death it was to be equally divided among his children ; the interest on the other half was to be paid to the appellee Daniel, during his life, and at his death it was to be divided among his children. The appellees produced this paper in the Orphans' Court of Washington County and at the same time filed a petition for letters of administration on the estate of the decedent, alleging that the said paper-writing was not the last will and testament of Eliza Stouffer, for the reason that at the time it was executed by her, she was mentally incapable of making a valid deed or contract, because of age, disease and infirmity. The Court having heard the testimony of the subscribing witnesses to the said paper-writing purporting to be a will, and also the testimony of other wit-

nesses, decided that at the time it was executed she was not capable of making a valid deed or contract, and that the paper-writing was not her last will and testament, and thereupon letters of administration on her estate were granted to the appellee Daniel, the appellee John having renounced in his favor. The appellant at the time of his purchase of the house and lot had no knowledge of the paper purporting to be a will, or of the proceedings of the Orphans' Court in reference to it. When he was imformed of these matters, he refused to accept the property and pay the purchase money. The appellees thereupon filed a bill in equity for the specific performance of the contract, and the Circuit Court decreed that the appellant should pay the purchase money, and that the appellees should convey the property to him and to his heirs by a good and sufficient deed.

Let us consider the effect of the proceedings in the Orphans' Court. When the letters of administration were granted, the Court was in the exercise of its rightful and exclusive jurisdiction, and its determination of the question decided was binding in all other Courts. While the letters remained in force the matters adjudicated by the grant of them could not again become the subject of controversy. The administrator was entitled to take charge of the personal estate of the deceased and to represent her in all questions relating thereto; and it could not be alleged in opposition to his authority that the deceased had left a last will and testament. All these consequences resulted from the exercise of a competent jurisdiction. The law confides to the Orphans' Court, and to no other tribunal, the authority to grant letters of administration on the estate of a deceased person; and in performing this duty the Court is enjoined to make judicial inquiry "whether or not the party dying left any will," and it is forbidden to grant administration unless such dying intestate is proved to its satisfaction. *Code of Public General*

*Laws, Art.* 93, *sec.* 16.   But although the question of administration has been thus adjudicated, it is competent for the Orphans' Court in a proper case to revoke the letters; and the statute law expressly requires it to revoke them if a will for the disposition of the personal estate shall afterwards be proved according to law, and the executor named therein shall make due application for letters testamentary and execute a bond—Code, Art. 93, sec. 36. It is, therefore, clear that letters of administration do not prove the intestacy of the deceased, when a paper purporting to be his will is propounded for probate.   In fact, the grant of them is a judgment *in rem,* which establishes conclusively the legal status of the administrator, and invests him with rights belonging to that capacity.   Judgments however prove only the matter decided, and are not evidence of other matters which may be inferred by argument from them; even though the inferences are necessary and inevitable.   The principles laid down by the Judges in the *Duchess of Kingston's Case* on this question have been uniformly recognized by the Courts.   Copious illustrations of their application may be found in decided cases, and in the works of text writers.   A few will suffice for the present purpose.   We quote from *Taylor on Evidence, sec.* 1490, " Though a judgment *in rem* is binding on all the world as to the precise point directly decided, and consequently the decision cannot be impeached in the same or any other Court, by showing that the facts on which it immediately rests are false; yet, where these facts are themselves put directly in issue in a subsequent suit, the judgment does not—with one exception which will be presently mentioned—furnish conclusive evidence of their truth, however necessary it may have been for the Court proceeding *in rem* to have determined that question, before it adjudicated on the principal point.   Thus, although the Ecclesiastical Courts *were* not, and the existing Courts of probate *are* not, authorized to grant letters of administration, un-

less the intestate be *dead,* these letters are so far from being conclusive evidence of the death, when that fact is put in issue in another Court, that on one or two occasions, they have not been regarded even as *prima facie* proof." It may be mentioned that in *Mutual Benefit Life Ins. Co. vs. Tisdale,* 91 *U. S.,* 238, the Supreme Court held that in an action brought by a plaintiff in his individual[1] character, letters of administration granted to him were no evidence whatever of the death of his intestate. The exception mentioned in the above cited section of *Taylor* is "where it appears on the face of the proceedings *in rem* that the fact on which the principal point depended, was itself put *directly in issue* and was *actually decided* by the Court. Here, if this fact be again controverted between the *same parties,* or persons claiming under them, whether in the same, or a different Court, the judgment *in rem* will, almost universally be conclusive upon the question." *Taylor, sec.* 1491. The same author in section 1520, states that it is an unquestionable rule of law that neither a judgment *in rem* nor a judgment *inter partes* is evidence of any matter which can be *inferred only by argument* from the judgment.

When the Orphans' Court granted letters of administration to the appellees, they stated in the same order that the identical paper-witing in question was not the last will and testament of the dcceased. We will examine the legal effect of this statement. The Court has no jurisdiction in matters of probate, except such as is conferred by the 93rd Article of the Code. It provides that when a will is exhibited for probate to the Orphans' Court, and any of the next relations of the deceased shall attend, or if reasonable notice of the exhibiting of the will has been given to such as might be conveniently served with notice, and no caveat shall be made, the Court may proceed to take the probate. But if none of them attend and no notice has been given, the Court must either direct summons to be issued for

them or some of them, to appear on some fixed day, to show cause wherefore the will should not be proved; or must direct notice to be given in the public papers or otherwise, and if no objection shall be made, or caveat entered, on or before the day fixed, the Court may take the probate.    But if objection shall be made, the Court shall have cognizance of the matter, and shall determine according to the testimony produced on both sides.    And in all cases where the probate is taken without contest, any party in interest may afterwards file a petition, and obtain a hearing in opposition to the will. Article 93, sections 316, 317, 320.    It is thus seen that great pains have been taken to afford to all persons interested an opportunity to be heard before a determination is made against them.  Two parties are contemplated as having a right to be heard ; the one, which maintains the validity of the will by exhibiting it for probate ; the other, which comprehends all persons interested, who may desire to defeat and set it aside.    All persons interested may appear and be heard on one side or the other of the question.    Provision is made for giving notice to those who might be opposed to the probate of a will; but not for those who wish to establish it; because they are already represented before the Court by the person who exhibits it for probate. When a decision is made between these opposing parties, it is a judgment *in rem* conclusively establishing either the validity or invalidity of the alleged will.    But the Orphans' Court has no jurisdiction to determine the question of probate, until the will is exhibited for the purpose of having it proved.    Now the petition on which the Orphans' Court granted letters of administration distinctly stated that the paper-writing purporting to be a will was not presented for probate ; on the contrary, the averment was made that it was not the last will and testament of the deceased.    The Court heard such testimony as was offered by the petitioners who assailed the will; but no

opportunity of being heard was afforded to those persons who were interested in maintaining it. In point of fact, as we learn from the record, they all reside in Illinois, and some of them are under the age of twenty-one years. There were no opposing parties before the Court; there was no issue—affirmed on one side and denied on the other. Its decision was pronounced upon an application entirely *ex parte.* Our conclusion is that it had not the jurisdiction to decide the question of probate under these circumstances. The judgment rendered by the Orphans' Court is therefore in legal effect merely a grant of letters of administration, and this, we have seen, will not prevent the probate of a will.

This then is the posture of the case. The appellant is required to accept and pay for property, when the title of the vendors will be defeated if this supposed will is admitted to probate. It is the accepted doctrine that specific performance of contracts is not a matter of strict right in either party, but of that sound and reasonable judicial discretion which is governed by general rules and principles of justice. A Court of equity will not compel a purchaser to take a title which is not free from reasonable doubt, and which might in reasonable probability expose him to the hazards of litigation. This will may hereafter be propounded for probate, and in that event the title of the vendors would depend on the contingencies of a law-suit. We cannot therefore require the appellant to complete his purchase.

> *Decree reversed, and*
> *bill dismissed with costs.*

(Decided 9th March, 1886.)


Alvey, C. J., delivered the following opinion:

I concur in the reversal of the decree appealed from in this case, but not in the reasons assigned for such re-

versal. As I understand the opinion, it asserts that the action of the Orphans' Court, in declaring against the validity of the paper purporting to be the will of Mrs. Stouffer, was simply void, because the paper had not in fact been propounded for probate by the parties producing it. In other words, because the parties producing the paper had not asked the Court to admit it to probate as a valid will, therefore the order of the Court rejecting the paper and granting letters of administration was wholly without effect upon the paper as a will,—the Court, as supposed, having assumed jurisdiction in the premises without warrant of law.

This ground for declaring the proceeding simply void and without effect, it strikes me, has too much of the appearance of a technical refinement, to be altogether sound; and I do not think it has proper foundation in fact. The paper was certainly propounded for the action of the Court.

The two sons named as executors in the paper exhibited were the only children and heirs-at-law of the deceased, and they were made devisees and legatees for life, with remainder to their children. They produced the paper, purporting to be the will of their mother, to the Orphans' Court, and submitted the same to the judgment of that tribunal, as they were bound to do under the law; but in their petition, they repudiated the nomination of themselves as executors, and submitted the paper with a disclaimer on their part, that they offered it for probate, for the reason, as they alleged, that the deceased was incapable, for want of mental capacity, to make a valid will;—thus accompanying the exhibition of the paper with a caveat against its admission to probate. In the same petition, they prayed to have letters of administration granted to them upon the estate.

Upon this petition, the Orphans' Court passed an order fixing a day for hearing and inquiring "into the matters and things set forth in said petition;" and gave directions

for summoning the witnesses to the paper exhibited, and such other·witnesses as the petitioners might desire. On the day set, the hearing was had upon the testimony of witnesses produced at the instance of the petitioners ; and the Court, upon hearing the evidence, then and there, passed the order of the 4th of February, 1885, whereby it is recited, that the Court having heard the testimony of witnesses, "concerning the paper purporting to be the last will and testament of the said Eliza Stouffer, and the Court being satisfied that at the time the said paper was executed by her, she was not capable of making a valid deed or contract, and that the said paper-writing is not her last will and testament,"—thereupon it was adjudged, ordered and decreed, by the Court, that the said Eliza Stouffer *died intestate,* and that letters of administration upon her estate be granted to Daniel B. Stouffer.

Now, with such a state of proceedings as this, disclosed by the record before us, it is rather difficult, I think, to say that the paper was not before the Orphans' Court, and that the sons and heirs-at-law of the deceased did not invoke and obtain the judgment of that Court against the validity of the paper as a will, and so procured probate to be refused. The Court was one of competent jurisdiction, and the subject-matter was plainly within the jurisdiction ; and though the proceeding may not have been formal and regular, still there was a judgment evoked that binds and concludes the parties to the proceeding. Those parties could never be heard to contend, in the face of the proceedings had at their instance, that the paper should ever thereafter be admitted to probate. The judgment of the Orphans' Court, therefore, is not a mere nullity, and without any effect upon the validity of the paper. It was necessary to adjudicate the paper invalid as a will, and to refuse probate thereof, before the Orphans' Court could proceed to declare, as it did, that the deceased had died intestate, and to grant letters of administration as upon an

intestate's estate.   Both the Orphans' Court and the parties invoking its action, clearly understood that the paper exhibited had been finally refused admission to probate.

But the question here is, whether the *refusal of probate* to this paper, under the circumstances of the case, will finally bind and conclude the parties entitled in remainder, those parties being non-residents, and some of them infants, and who were in no manner represented in the proceedings that took place in the Orphans' Court in regard to the paper exhibited by the two sons named as executors therein,—those proceedings being entirely *ex parte?*

The two sons named as executors repudiated the appointment, and opposed the admission of the paper to probate.   It was their personal interest to do so, and it was their strict right also.   But their assuming such position left the will of the deceased without a friend to vindicate it before the Court.   It was produced and exhibited to the Court by its enemies simply and solely for the purpose of having its validity pronounced against ; and, of course, in the absence of any representative of the deceased, or her estate, there was but small chance for the support of the paper as a valid will.  · Where, as in this case, there is no party before the Court who has an interest in supporting a testamentary paper produced, the general principle is, that the Court, before it proceeds to act, will require the appearance of such a party, or some one to represent him (*Redwill vs. Redwill,* 3 *Phillimore,* 410) ; and that course would seem to be dictated by the first principles of justice.   But with respect to the paper in question no such course was pursued.

But as the parties in interest were non-residents, and therefore beyond the reach of process from the Court, and were without legal notice of the proceedings, what course could have been pursued in order to make binding upon those parties the order of the Orphans' Court declaring against the validity of the paper, and refusing probate

thereof? In such case, according to my opinion, there ought to have been appointed an administrator *pendente lite*, charged with the special duty of defending the integrity of the paper produced, and securing for it admission to probate, if that was attainable upon full and fair investigation. That there was an inherent power in the Orphans' Court, as a Court of probate, to make such an appointment, and for such a purpose, I think there can be no doubt. *Walker vs. Woollaston*, 2 *P. Wms.*, 576, 589; *Davis vs. Charter*, 2 *Phill.*, 545, 550. Such a power would seem to exist from the necessities of the jurisdiction, and for the general purposes of justice; and such has been the opinion of Courts of the highest authority.

In the very recent case of *McArthur vs. Scott*, 113 *U. S.*, 340, a question very analogous to the present was largely considered. That was a case where a will was admitted to probate in common form, but afterwards the executors withdrew, and proceedings were taken to contest the validity of the will, and the result of the proceeding was that the probate was annulled and the will declared void. A question subsequently arose as to the effect of this proceeding upon the rights of unborn grandchildren entitled in remainder; and it was held, that, because the estate, and the rights of the unborn grand-children, were left unrepresented in the contest against the probate, the decree annulling the probate was absolutely void as against such grand-children, and that their rights were in no manner affected by the proceeding. And the Supreme Court in that case, speaking of the power of a probate Court to appoint an administrator *pendente lite*, to defend a will or probate, say: "Nor can we doubt that the Court, in the exercise of the appropriate branch of its jurisdiction, (probate jurisdiction,) might in its discretion have granted administration limited to the single object of defending the will and the probate against the bill in equity of the heirs. Courts vested with the jurisdiction of

granting letters testamentary and of administration have the inherent power of granting a limited administration, whenever it is necessary for the purposes of justice." And they say, "that the powers exercised by the English Courts in this respect appertain to the Courts of like jurisdiction in this country, although not specified in the statutes under which they act."

Assuming then that the Orphans' Court had the power to make such an appointment, and that it was its duty to exercise the power for the protection of the parties interested in remainder, but neglected or disregarded that duty, should the *ex parte* order, pronounced against the paper, any more than the order passed in more solemn form in the case just referred to, be regarded as binding upon the rights of the absent and undefended parties? The order or decree in the case of *McArthur vs. Scott* was passed in the exercise of mere probate jurisdiction, expressly conferred by statute; and because the Court had failed to place some person in a representative relation to the interests of the unborn grand-children, that decree or order revoking the probate and setting aside the will, was held to be a nullity as against those parties. For the same reason the same result would seem to follow in this case.

It is true, the paper produced in the Orphans' Court could never have any effect until admitted to probate as a valid will. But there is no limitation as to the time within which a paper shall be propounded for probate, nor will any lapse of time exclude the inquiry, whether a certain paper constitutes the will of a party or not. *Clagett vs. Hawkins*, 11 *Md.*, 381, 387. And though the Code provides (*Art.* 93, *sec.* 321,) that where the Orphans' Court adjudicates against the probate of a will or codicil, such paper "shall not be received for probate in *any other* county, it by no means follows that parties not bound by the order refusing probate, shall be excluded from thereafter propounding the paper for probate in the same county. That

would seem to be allowable, if not by clear implication from the terms of the statute, certainly from the necessity of the case, and upon general principles of justice; and that too upon the same principle that the Court may, at any time, be applied to to revoke or recall a probate previously improvidently granted, as in the case of *Clagett vs. Hawkins, supra.*

With this view of the case, and the rights of the parties interested in remainder, in having the paper admitted to probate, I quite agree that the purchaser of the property, the present appellant, ought not to be compelled to accept the property under the sale made by the heirs-at-law; and I therefore concur in the reversal of the decree.