# FRANK H. CALLAWAY et al. *vs.* THE MAYOR and CITY COUNCIL OF BALTIMORE.

*Bill for an Injunction to Protect a Contract With a Municipality—Ordinance Repealing Part of an Appropriation— When Money Appropriated in Ordinance of Estimates and Unexpended Does Not go into Sinking Fund, Under Charter of Baltimore City.*

Certain officials of Baltimore City, in pursuance of their authority, agreed to purchase from the plaintiff 114 acres of land as the site of a new reservoir. Plaintiff offered the land in his own right as to 92 acres, as the agent of A as to 12 acres, and as the agent of B as to 10 acres. As to the 92 acres plaintiff had only an equitable title under an option from a trustee in an equity proceeding, and when, after making the contract with the city, he closed this option, exceptions to the sale were filed in the equity cause which were there sustained and the sale set aside. Plaintiff's appeal from this order is still pending. Subsequently the city passed an ordinance repealing the appropriation for the purchase of a reservoir site. Plaintff's bill in this case stated that the repealing ordinance is void, and that as soon as the exceptions to the sale of part of the land to him are disposed of, he will be able to convey a good title. The bill prayed for injunction restraining the city from doing anything under the repealing ordinance until the determination of the appeal from the order setting aside the sale of said land to plaintiff, and that the repealing ordinance be declared void. *Held,* that upon the plaintiff's own showing he is not now entitled to maintain a bill for specific performance of the contract, and it does not appear with reasonable certainty that he ever will be so entitled, and not having shown a clear *prima facie* right he is not entitled to an injunction to protect such doubtful right as he does possess to compel specific preference at some future time.

The Ordinance of Estimates of Baltimore City of 1903 contained an appropriation, in pursuance of an Act of the Legislature, of $350,000 to be taken from a loan, for the acquisition of land and construction of a new reservoir. The stock authorized to be issued to raise this sum has not been issued and the ordinance was repealed as to the part of the appropriation. City Charter, sec. 36, provides that "in case of any surplus arising in any fiscal year by reason of any excess of income received from the estimated revenue over the expenditures for such year the said surplus shall be credited to the general sinking fund." *Held,* that the proceeds of the loan thus dedicated to a particular use, under an Act of the Legislature, does not come within the description of "estimated revenue" as used in sec. 36, and even if the stock had been sold, the proceeds in the hands of the agents of the city could not be turned into the sinking fund.

Appeal from the Circuit Court of Baltimore City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Thomas G. Hayes* and *Edgar H. Gans* (with whom were *R. Lee Slingluff, Arthur W. Machen, Arthur W. Machen, Jr.*, and *Michael A. Mullin* on the brief), for the appellants.

*W. Cabell Bruce*, City Solicitor, and *Albert C. Ritchie, Third Assistant City Solicitor*, (with whom was *Edgar Allan Poe, First Assistant City Solicitor* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City refusing to grant an injunction, upon an application made to it by the appellants, on the bill of complaint and exhibits appearing in the record. The appeal therefore presents the question of the sufficiency of the appellants' case as made out by their bill and exhibits.

The material facts therein set out are as follows. The Mayor and City Council of Baltimore, in pursuance of the authority conferred on it by ch. 333 of the Acts of 1902, passed an ordinance to create a loan of not exceeding $1,000,000 maturing in 1943, and to issue its stock therefor from time to time as required, for the purpose of extending its water service and constructing an additional reservoir. The loan was submitted to and approved by a popular vote at the election of November 4th, 1902. The city is duly authorized by its charter to purchase or acquire, either directly or through its duly authorized agents, lands suitable for its water service.

The Ordinance of Estimates for the year 1903, as framed by the Board of Estimates and passed by the City Council and approved by the Mayor on December 8th, 1902, contained under the head of "*Water Board*" an item of appropriation as follows, "*to be taken from the water 1943 loan for the purchase of land or the acquisition by condemnation or otherwise*

*by the Mayor, Comptroller and Water Engineer lot for a new reservoir and for cost of construction three hundred and fifty thousand ($350,000) dollars."*

On March 16th, 1903, the Mayor and Comptroller purporting to act in execution of the power conferred by the Ordinance of Estimates entered into a contract with the appellants to purchase from them for $2,000 per acre a tract of 114 acres of land with certain rights of way, hereinafter designated as the Callaway site, lying in the suburbs of Baltimore as a site for the new reservoir. The bill alleges that the Water Engineer, who refused to unite in making the contract, participated with the other two agents of the city, *i. e.* the Mayor and Comptroller, in examining various proposed sites for the reservoir and that "the said three agents" met together after due notice and discussed the availability of the respective proposed sites, and the Mayor and Comptroller who constituted a majority of the three by a formal vote selected the Callaway site, and subsequently signed the contract for its purchase.

This contract, which consists of an offer on the part of the vendors to sell and an acceptance of the offer on behalf of the city signed by the Mayor and Comptroller, is filed with the bill as an exhibit. Without encumbering this opinion with the full text of the several papers constituting the contract we state their salient features. The offer to sell was made by the appellant, Callaway in his own right as to 92 acres, as the agent of George R. Vickers, Jr., trustee in the case of *Vickers* v. *Vickers*, in the Circuit Court of Baltimore City as to 12 acres and as the agent of The North Baltimore Land Company as to the remaining 10 acres. Callaway had but an equitable title to the 92 acres under an option from Fielder C. Slingluff *et al.*, trustees in the case of *Slingluff* v. *Slingluff*, pending in the said Circuit Court. He subsequently accepted this option and a sale of the 92 acres to him was reported by the trustees to the Circuit Court in that case, but the Court sustained certain exceptions which were filed to the ratification of the sale and set it aside. Callaway took an appeal to this Court, from the order setting aside the sale to him, which has not yet been

heard. The city excepted to the ratification by the Circuit Court of the sale to it of the 12 acres by Vickers' trustee and its exceptions are still pending in that Court and undisposed of.

The acceptance on the part of the city, signed by two of its three agents, was made upon the condition that the land was to be conveyed to it by a title good and marketable to the satisfaction of the City Law Department which was to have a reasonable time to examine the title. The bill avers that the Law Department of the city examined the title and made "its report to the defendant in which report the said Law Department stated that the appellants were able to give a fee-simple title to the property free of all incumbrances," but no copy of the report appears in the bill or among the exhibits.

On June 8th, 1903, the personnel of the greater portion of the city officials having undergone a change, an ordinance was introduced into the City Council which was subsequently passed repealing so much of the Ordinance of Estimates for 1903 as appropriated the $350,000, to be taken from the water loan for the purchase by the Mayor, Comptroller and Water Engineer of a reservoir site and the erection of a reservoir. On July 20th, 1903, the Mayor and Comptroller sent a written communication to Callaway on behalf of the city refusing to recognize or be bound by the alleged contract of May 16th, 1903, to purchase the Callaway site alleging among other things as reasons for their action that the City Solicitor had rendered an opinion that the title to that land was not good and marketable and in fee-simple to the satisfaction of the city law officers and could not be made so.

The bill alleges that the land composing the Callaway site is in all respects admirably adapted to the purpose of a reservoir for the supply of water to the city and that the price of $2,000 per acre, at which it was sold to the city, was a reasonable one and did not exceed its market value and that the Mayor and Comptroller had acted in good faith in making the alleged contract for its purchase and that the contract is fair, just, mutual and reasonable. It is further alleged that the appellants are ready and willing to convey the property to the

city as soon as relieved from the obstruction created by the
exceptions aforesaid.

The bill insists that the said repealing ordinance is void and
in violation of sec. 36 of the City's Charter and also of Art. 1
sec. 10 of the Federal Constitution which forbids any State to
pass any law impairing the validity of contracts.    It further
insists that if the ordinance be upheld the $228,000 to be paid
for the Callaway site under the contract will by the provisions
of the charter be diverted into the sinking fund of the city and
will not be available for the payment of the purchase-money
to fall due under the contract, and the appellants will thereby
be deprived of any power to compel a performance of the con-
tract, and irreparable injury will be inflicted on them and their
contractual rights will be destroyed.

It then prays for an injunction restraining the city and its
officials from enforcing or doing anything under the said re-
pealing ordinance until the determination of the appeal from
the order of the Circuit Court setting aside the sale of the 92
acres to Callaway in the Slingluff case and the decision of the
exceptions pending in the Vickers' case; and that the repeal-
ing ordinance be declared void ; and for further relief.

It will thus be seen that the substance of the case set up by
the bill is that the city made a binding contract for the pur-
chase of the reservoir site from the appellants which it now
repudiates and refuses to perform, and that the appellants are
entitled to enforce its performance but cannot at this time in-
stitute proceedings for that purpose because of the exceptions
filed to the ratification of the sales in the Slingluff and Vick-
ers' cases.    It is insisted that unless the city be restrained from
treating the repealing ordinance as valid and enforcing it the
$228,000, intended to be applied to paying for the reservoir
site will under the operation of the City's Charter be covered
into its general sinking fund and the appellants will be pre-
vented from the effectual enforcement of their contract and
will suffer irreparable injury in that respect.

It is well settled that in order to lay a proper foundation
for an injunction to prevent an irreparable injury to some right

the bill must set forth a *plain right* as well as a probable danger that the right will be defeated without the intervention of the Court.    *Salmon* v. *Clagett*, 3 Bl. 161–2; *Co. Commrs.* v. *Franklin Coal Co.*, 45 Md. 473; *Whalen* v. *Delashmutt*, 59 Md. 253; *Truly* v. *Wanzer*, 5 How. 141; *D. L. & W. R. R.* v. *Cent. Stock Yards*, 6 L. R. A. 861; *Outcalt* v. *Helme*, 42 N. J. Eq. 665; *Miller's Equity*, sec. 580; *Am. & Eng. Encyc.*, 2 ed, vol. 16, p. 358 and cases there cited.    Even when the application to the Court of equity is only to protect a legal right until it can be established in some other proceeding the application being founded on the existence of the right the bill must show a fair *prima facie* case in support of the right. *Whalen* v. *Delashmutt, supra.*

The right which is fundamental to the whole case of the present appellants, and the one in respect to which they assert the danger of irreparable injury, is the right to compel the city to perform its contract by taking and paying for the reservoir site.    Their bill therefore in order to entitle them to maintain their suit should present as least such a *prima facie* case as would if established by proof authorize a Court of equity to enforce the contract.    The bill does not in our opinion measure up to the requirements of the law in that respect.    Not only are the appellants upon their own showing not now entitled to maintain a bill for the specific performance of the contract but it does not appear with *prima facie* force that they ever will be.

The only title which any of them had to 92 of the 114 acres constituting the reservoir site was the equitable title thereto of Callaway acquired under the sale to him by Fielder C. Slingluff *et al.*, trustees.    That title has been extinguished by an order of the Circuit Court, setting aside the sale, passed after the filing of exceptions and the taking of testimony thereon and an argument of counsel.    It is true we are informed that an appeal has been taken from that order of Court, but until the order has been reversed it must be presumed to be correct in a collateral proceeding like the one now before us.

Unless a vendor can show a title free from reasonable doubt to the land sold he cannot compel his vendee to take and pay for it. *Sharp St. Station* v. *Rother*, 83 Md. 295; *Emmert* v. *Stauffer*, 64 Md. 543; *Newbold* v. *Peabody Heights Co.*, 70 Md. 493; *Gill* v. *Wells*, 59 Md. 492; *Owings* v. *Baldwin*, 8 Gill, 337. The appellants not having shown by their bill such a clear *prima facie* right as is required of one who asks a Court of equity to protect his right by injunction, the learned Judge below committed no error in passing the order appealed from.

As it does not yet appear that the appellants will ever be entitled to institute proceedings in any form for the enforcement of the contract in question we abstain from expressing at this time any opinion upon the validity of the contract or of the repealing ordinance. Inasmuch however, as the appellants insist that if the repealing ordinance be not declared void the $228,000 out of the loan of 1943 intended to be used in payment for the reservoir site will by operation of the city charter be covered into the general sinking fund and lost to the purposes of the municipal water service, we will give expression to our views upon that subject to avoid future embarrassment in dealing with the proceeds of the loan.

We do not think that the provision contained in the Baltimore City Charter, by which the unexpected balance of the city's income remaining on hand at the end of each fiscal year is covered into the sinking fund, will operate upon this $228,000. That provision of the charter appears in sec. 36, and is as follows: "In case of any surplus arising in any fiscal year by reason of an excess of income received from the estimated revenue over the expenditures for such year the said surplus shall be passed to the Commissioners of Finance to be credited to the general sinking fund." There is nothing in the record to lead us to infer that the city has as yet sold the authorized stock to raise the $228,000, to pay for the new reservoir site or that it has in hand any of the money for that purpose. In fact, the counsel for the respective parties to the suit inform us that only the trifling sum of $141.90 of the

stock for the purchase and construction of the reservoir has been sold and that the proceeds of that sale have been expended in the purchase of boring tools to test the soil of intended reservoir sites. Certainly the city could not by reason of the presence in the charter of the clause under consideration be required to sell the stock, whose issue is restricted by the legislation authorizing it to the uses therein specified, and divert the proceeds of its sale from those specified uses by turning the money over to the general sinking fund. Even if the stock had been already sold and its proceeds thus dedicated by law to a special use were in the hands of the Comptroller or other financial agent of the city, it would be an unwarrantable diversion of that money to turn it into the sinking fund. We do not think that the proceeds of a loan thus dedicated by the statute authorizing its issue to a particular municipal use comes within the description of "estimated revenue" as used in the section referred to. Much less could it be said that the future proceeds of stock of the character above described that has not yet been issued or sold falls within the description of "estimated revenue" as used in that section. It is further to be observed that the Act of 1902, which specifies and limits the purposes to which the proceeds of this loan must be applied was passed subsequently to the Act creating the new charter of Baltimore City.

For the reasons appearing in this opinion the order appealed from must be affirmed and the bill dismissed.

*Order affirmed with costs and bill dismissed.*

(Decided April 12th, 1904.)